# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

PNC BANK, NATIONAL ASSOCIATION

    Plaintiff,

    v.

KENNETH D. SMITH, WILLIAM R.
DOOLEY, TERRY W. DOOLEY, ROBERT
MCNAUGHTON, CHRIS DOOLEY,
TIMOTHY R. STERRITT, and
NEW SOUTH VISION PROPERTIES, LLC,
a Florida Limited Liability Company,

    Defendants.

Civil Action No.:

1:14-CV-3368-ELR

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)), OR IN THE ALTERNATIVE, <u>MOTION TO CERTIFY</u>

Plaintiff PNC Bank, National Association ("<u>PNC</u>")[1] opposes Defendants'

Motion to Dismiss (Pursuant to Federal Rule of Civil Procedure 12(b)(6))

("<u>Motion to Dismiss</u>;" DE 5-1), or in the Alternative, Motion to Certify (the

"<u>Motion to Certify</u>," DE 5-1). PNC's allegations, construed most favorably to it,

establish that it is entitled to relief against Defendants under several guaranties that

---

[1] PNC is the successor by merger to RBC Bank (USA), Inc. ("<u>RBC</u>"), a North Carolina Banking corporation. (DE 1 at ¶¶ 2 and 32). RBC is the successor by merger to The Peachtree Bank ("<u>Peachtree Bank</u>"). (*Id.* at ¶¶ 3 and 31). PNC holds all pertinent loan documents referenced in its Complaint. (*Id.* at ¶ 33).

Defendants executed as additional security for a loan to a borrower that is not a party to this action. Moreover, the waiver language in the guaranties at issue in this case has already been found to obviate the necessity for confirmation of a foreclosure before pursuing a guarantor directly for any resulting deficiency. Therefore, PNC respectfully requests that the Court dismiss Defendants' Motion to Dismiss and their Motion to Certify.

## INTRODUCTION

Defendants Kenneth D. Smith ("Smith"), William R. Dooley ("W. Dooley"), Terry W. Dooley ("T. Dooley"), Robert McNaughton ("McNaughton"), Chris Dooley ("C. Dooley"), Timothy R. Sterritt ("Sterritt"), and New South Vision Properties, LLC ("New South" and collectively with Smith, W. Dooley, McNaughton, C. Dooley, and Sterritt, the "Guarantors") are guarantors on a May 6, 2004 loan made by Peachtree Bank to Hoschton Towne Center, LLC ("Borrower") in the original principal amount of $2,500,000.00 (the "Loan"). (DE 1 at ¶¶ 1-8, 14, 18, 20, 23, 26, and 30). (*Id.*, ¶ 14). The Loan is evidenced by a Promissory Note, dated May 6, 2004, by Borrower to the order of Peachtree Bank (the "Note"). (*Id.*, ¶ 16). On the same day, Borrower executed a Deed to Secure Debt and Security Agreement (the "Deed") in favor of Peachtree Bank, securing property located in Jackson County (the "Property"). (*Id.*, ¶ 17). Additionally, on

100092456.1

May 6, 2004, Guarantors each executed guaranties (the "2004 Guaranties"), in which they agreed to guaranty the indebtedness owed by Borrower on the Loan, as well as any future indebtedness owed from Borrower to Peachtree Bank (the "Indebtedness"). (*Id.*, ¶ 18; DE 1-3 at 2).

From 2004 to 2008, Borrower and Peachtree Bank agreed to four modifications to the Loan, primarily consisting of changes to the principal amount due on the Loan and to corollary changes in maturity dates of the affected Notes. (*Id.*, ¶¶ 19, 21, 22, 24, 25, 27, and 28). Concurrent with the modifications to the notes, Guarantors executed additional guaranties on the following dates: (1) May 2, 2005 (the "2005 Guaranties"), (2) November 10, 2006 (the "2006 Guaranties"), (3) April 2, 2007 (the "2007 Guaranties"), and (4) April 7, 2008 (the "2008 Guaranties" and collectively with the 2004 Guaranties, the 2005 Guaranties, the 2006 Guaranties, the 2007 Guaranties, and the 2008 Guaranties, the "Guaranties").[2] (DE 1, ¶¶ 20, 23, 26, and 30).

---

[2] The substance of the block of guaranties comprising the 2004 Guaranties are all the same, with the Guarantors separately executing each guaranty. (DE 1-3 at 2-17). Similarly, the block of guaranties comprising each of the subsequent 2005 Guaranties, the 2006 Guaranties, the 2007 Guaranties, and the 2008 Guaranties are also the same, with the Guarantors executing each separately. (DE 1-5 at 2-17; DE 1-8 at 2-9; DE 1-11 at 2-13; and DE 1-14 at 2-19). For the sake of brevity, PNC will only cite to the first guaranty in each applicable block, with the express intent of having such reference equally apply to all guaranties within the referenced block. Additionally, the term "Loan Documents" refers to the Note, the Deed, Guaranties, and any modification, thereto, or other loan documents, pertaining to the Loan.

100092456.1

By executing each of the Guaranties, Guarantors agreed to certain terms and conditions. First, the Guaranties indicate that Guarantors agreed to the absolute, unconditional, and continuing nature of the Guaranties. (DE 1-3 at 2; DE 1-5 at 2; DE 1-8 at 2; DE 1-11 at 2; DE 1-14 at 2). Second, the Guaranties show that Guarantors waived their legal and equitable defenses, other than payment and performance of the debt owed by Borrower on the Loan. (*Id*.) Third, these same Guaranties further demonstrate that Guarantors expressly waived the necessity for PNC to first confirm the foreclosure of the Property. (DE 1-3 at 3; DE 1-5 at 3; DE 1-8 at 3; DE 1-11 at 3; DE 1-14 at 3). Finally, Guarantors agreed to remain jointly and severally liable for the Indebtedness. (*Id*.)

PNC's Complaint alleges that Borrower defaulted on the Loan by failing to pay all outstanding principal and interest then due by the maturity identified in the Fourth Modified Note. (*Id.*, ¶ 36). The Complaint further alleges that on April 18, 2013, PNC notified Borrower and Guarantors that the Loan was in default, its intent to accelerate the Loan, and its intent to seek attorney's fees. (*Id*., ¶¶ 37-38). The Complaint also alleges that Guarantors failed to either cure the default by paying the Indebtedness owed on the Loan. (*Id*., ¶¶ 44-46). Finally, the Complaint alleges that as part of Count II, Guarantors are liable for attorney's fees and expenses, pursuant to O.C.G.A. § 13-1-11. (*Id.*, ¶¶ 49-53). Accordingly, by filing

the instant action, PNC seeks payment of the Indebtedness due on the Loan and attorney's fees and expenses from Guarantors.[3]

Undeniably, the Guaranties are absolute, unconditional, and continuing. Guarantors further agreed to remain jointly and severally liable for the debt obligations of Borrower. Moreover, Guarantors explicitly agreed to waive certain legal and equitable defenses, generally, and PNC's need to confirm the Foreclosure before pursuing collection of the Indebtedness, specifically. PNC, thus, requests that this Court deny the Motion to Dismiss and the Motion to Certify.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### I. **Legal Standard**

"To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in a complaint need not be detailed but "must

---

[3] PNC does not deny that a foreclosure of the Property occurred on August 6, 2013 (the "Foreclosure"). It further does not deny that it was unable to confirm the Foreclosure, due to the sale of the Property eleven months after Foreclosure. Moreover, PNC notes that Guarantors do not mention Count II, in either motion. (DE 5-1, *generally*).

be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true…." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). PNC has met its burden of asserting a sufficient factual basis to establish facial plausibility of its claims against Guarantors for breach of the Guaranties and for attorney's fees.

## II. The Motion to Dismiss Should Be Denied Because PNC Has Pled Facts Entitling It To Relief.

In Count I of the Complaint, PNC asserts that Guarantors breached the Guaranties executed by Guarantors from 2004 to 2008. In Georgia, a party asserting a breach of contract cause of action must plead that (1) the presence of an enforceable contract, (2) a breach of that contract, and (3) resulting damages. *Broughton v. Johnson*, 247 Ga. App. 819, 819, 545 S.E.2d 370 (2001). To establish the existence of a contract, "[u]nder Fed.R.Civ.P. 8(a), a plaintiff must 'either attach a copy of an alleged contract to the complaint or plead it according to its legal effect.'" *McClelland v. First Ga. Cmty. Bank,* No. 5:09–CV–256 (CAR), 2010 WL 3199349, at *3 (M.D.Ga. Aug.12, 2010) (internal citation omitted). Moreover, a creditor makes out a *prima facie* case in a guaranty enforcement action by providing evidence that (1) the debtor executed the guaranty and that (2) the amount guaranteed by the guaranty is due. *E.g. Caves v. Columbus Bank & Trust Co.,* 264 Ga. App. 107 (2003); *see also Vickers v. Chrysler Credit Corp*, 158

Ga. App. 434, 441, 280 S.E.2d 842 (1981) (finding creditor entitled to summary judgment by showing the existence of a guaranty and the amount owed pursuant to the guaranty).

In this instance, PNC has met its threshold pleading requirements for Count I of its Complaint. First, it has set forth a factual basis for its breach of guaranty cause of action by pleading sufficient basis for establishing (1) the presence of the Guaranties, (2) Guarantors' breach of the Guaranties, and (3) the basis of damages due to the resulting breach. Second, PNC attached copies of all guaranties, on which it bases its breach of guaranties claim, to the Complaint. In fact, Guarantors do not deny, as they cannot, either (1) the validity of the Guaranties, (2) Guarantors' breaches of the Guaranties, or (3) that PNC has incurred damages (i.e. non-payment of the Indebtedness plus attorney's fees) as a result of such breaches.

Nevertheless, Guarantors now argue that PNC did not meet a condition precedent prior to seeking enforcement of the Indebtedness from Guarantors. (DE 5-1 at 8-13). Guarantors erroneously omit the fact that no such condition precedent exists here as Guarantors not only waived legal and equitable defenses that could apply here but that they further explicitly waived the necessity for PNC to confirm foreclosure of the Property before seeking to collect the deficiency directly from Guarantors. With no preclusive condition precedent applicable here,

PNC is entitled to seek the collection of the Indebtedness from Guarantors. Guarantors' Motion to Dismiss should be denied.

**A.    The continuing Guaranties outline Guarantors' absolute and unconditional debt obligations.**

The Guaranties are fully enforceable as their collective "absolute" and "unconditional" nature is "unambiguous, explicit, and unconditional as to [their] material terms." *Reece v. Chestatee State Bank*, 260 Ga. App. 136, 139, 579 S.E.2d 11 (2003); *see also Ramirez v. Golden*, 223 Ga. App. 610, 611, 478 S.E.2d 430 (1996). When a guaranty is absolute, the guarantor becomes liable upon non-payment by the principal, and the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantor. *E.g., Johnson v. First Nat. Bank of Atlanta*, 143 Ga. App. 384, 385, 238 S.E.2d 747 (1977). It is beyond dispute that each of the Guaranties state that Guarantors' obligations remain "absolute" and "unconditional" guarantees of full and punctual payment and satisfaction of any indebtedness Borrower may owe PNC. (DE 1-3 at 2; DE 1-5 at 2; DE 1-8 at 2; DE 1-11 at 2; DE 1-14 at 2).

By executing the Guaranties, Guarantors further agreed to guaranty the future debt obligations of Borrower, including any modifications to any of the Loan Documents. A guaranty that contemplates a future course of dealing between the creditor and the debtor is deemed a continuing guaranty. *Lothridge v. First*

*Nat. Bank of Gainesville*, 217 Ga. App. 711, 712, 458 S.E.2d 887 (1995). Accordingly, a continuing guaranty guaranties all future obligations of a named borrower according to the guaranty's terms until terminated. *Id; see also Beasley v. Wachovia Bank*, 277 Ga. App. 698, 699, 627 S.E.2d 417 (2006). In this instance, the Parties agreed that each of the Guaranties were continuing guaranties until specific terminating events occurred. (DE 1-3 at 2; DE 1-5 at 2; DE 1-8 at 2; DE 1-11 at 2; DE 1-14 at 2). No terminating event has occurred to invalidate any of the Guaranties. Thus, the Guaranties remains effective as to each of the Guarantors, as do their debt obligations under not only the Loan but also any other debt obligations incurred by Borrower from PNC.

**B.     Guarantors waived their use of certain defenses.**

Georgia appellate courts have long abided by the principle that they "are required to construe agreements in a manner that 'respects the parties' sacrosanct freedom of contract." *Comm. & Southern. Bank v. DCB Invest., LLC*, 328 Ga. App. 605, 610, 760 S.E.2d 210 (2014) (*citing Monitronics Intern., Inc. v. Veasley*, 323 Ga. App. 126, 746 S.E.2d 793 (2013)); *see also Duncan v. Integon Gen. Ins. Corp*., 267 Ga. 646, 650, 760 S.E.2d 210 (1997). Only in the rarest cases should a contract be declared void as against public policy. *Colonial Prop. Realty Ltd. Partnership v. Lowder Const. Co., Inc*., 256 Ga. App. 106, 111-12, 567 S.E.2d 389

(2002) (holding provision shifting risk of loss did not violate public policy). In this instance, Guarantors themselves agree that the parties are free to contract as they see fit. (DE 5-1 at 14). Moreover, Guarantors fail to point to any public policy proscriptions that prevent this Court from enforcing the Guaranties including, but not limited to, Guarantors' numerous defense waivers.

The waiver of legal and equitable defenses in a guaranty is enforceable against the guarantor as a matter of law if such waiver is "plain, unambiguous, and capable of only one reasonable interpretation." *Hanna v. First Citizens Bank & Trust Co., Inc.*, 323 Ga. App. 321, 327, 744 S.E.2d 894 (2013). It is axiomatic that a guarantor "may consent in advance to a course of conduct which would otherwise result in his discharge," including the waiver of potential defenses available to him. *Bobbitt v. Firestone Tire & Rubber Co.*, 158 Ga. App. 580, 581, 281 S.E.2d 324 (1981) (internal citations omitted); *accord Baby Days, Inc. v. Bank of Adairsville,* 218 Ga. App. 752, 755, 463, S.E.2d 171 (1995) (finding guarantors consented to remain liable for indebtedness due following release of other security of loan, including release of other guarantor); *Ameris Bank v. Russack*, No. 6:14-cv-2, 2014 WL 4187672, * 2 (S.D. Ga. Aug. 21, 2014) (slip opinion) (finding guarantor explicitly waived O.C.G.A. §§ 10-7-21 and 10-7-22 defenses); *see also Bank of the Ozarks v. Goff* , No. 3:13-CV-23 (CDL), 2014 WL 132135, * 2 (M.D.

Ga. Jan. 14, 2014) (slip copy) (applying waiver of defenses in guaranty to claim of increased liability under the note).

Guarantors ignore the fact that they waived both legal and equitable defenses, other than actual payment and performance of the Indebtedness, when they executed the Guaranties.  In this regard, Guarantors cannot meet their burden of proving their 12(b)(6) claim as "Georgia law is clear that creditors are entitled to summary judgment in a suit on an unconditional guaranty when the guarantor has waived all of his defenses."  *Core LaVista, LLC v. Cumming*, 308 Ga. App. 791, 795, 709 S.E.2d 336 (2011).  For example, the 2004 Guaranties and 2005 Guaranties identify numerous defenses that Guarantors agreed to waive.  (DE 1-3 at 3; DE 1-5 at 3).  Paragraph 7 of the 2006 Guaranties and the 2007 Guaranties, further delineate that Guarantors "waive[] any and all defenses, claims, and discharge of Borrower, or any other obligor, pertaining to the Indebtedness, except the defense of discharge by payment in full."  (DE 1-8 at 3; DE 1-11 at 3).  Finally, by executing the 2008 Guaranties, Guarantors similarly waived numerous defenses, including "any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness."  (DE 1-14 at 3).  The Motion to Dismiss must fail as Guarantors agreed on five separate occasions to waive their legal and equitable defenses.

**C.   Guarantors expressly waived the requirement for confirmation of foreclosure.**

Despite their repeated waivers of defenses, Guarantors argue that they are not liable on the Guaranties based on PNC's decision to not confirm the foreclosure of the Property.  (DE 5-1 at 8-13).  According to Guarantors, "because Plaintiff failed to plead the indispensible element of confirmation, Plaintiff's claims fail as a matter of law, and should be dismissed."   (*Id.*)  Guarantors' argument fails as it both directly contradicts current Georgia law and the very terms of the Guaranties to which they agreed.[4]

Contrary to Guarantors' position, PNC's inability to successfully confirm the Foreclosure does not constitute a condition precedent to the instant action,  as Guarantors explicitly waived such a requirement.   A guarantor's waiver of certain defenses, including waiver of a confirmation of a foreclosure sale, as outlined in O.C.G.A. § 44-14-161, "does not impair [a lender's] authority to collect the difference between the amount of the note and the foreclosure proceeds from [the

---

[4] PNC does not dispute that it was required to obtain confirm the Foreclosure to pursue a deficiency on the Loan against Borrower.  Nevertheless, the totality of controlling case law cited by Guarantors in support of their proposition that confirmation of foreclosure is required prior to seeking a deficiency judgment is distinguishable as such cases either focus solely on deficiency judgments only involving borrowers or in which the guarantors' waiver of defenses was not mentioned.  (DE 5-1 at 8-13).

guarantor].”[5]   *HWA Properties, Inc. v. Comm. & S. Bank*, 322 Ga. App. 877,  887-888, 746 S.E.2d 609 (2013)  (affirming summary judgment in favor of lender who sought to enforce guaranty in spite of failed attempt to confirm foreclosure of collateral property), *cert. denied, Nov. 18, 2013* (hereinafter “<u>HWA</u>”); *accord Comm. & S. Bank v. DCB Investments, LLC*, 328 Ga. App. 605, 614, 760 S.E.2d 210 (2014) (reversing denial of lender’s summary judgment when lender sought to enforce guaranties following failed foreclosure confirmation), *cert. denied* Jan. 20, 2015 (hereinafter “<u>CSB</u>”).   Moreover, the U.S. District Court for the Middle District of Georgia, recently upheld these decisions.  *See CertusBank, N.A. v. JSD-South Land Resources, LLC*, No. 5;13-CV-418 (MTT), 2014 WL 5668173, *4 (M.D. Ga. Nov. 4, 2014) (determining guarantors’ liability on guaranties remained following waiver of all defenses, including “waiver of reliance on anti-deficiency statutes,” and guarantors’ agreement to remain liable even if the borrower “has such obligation discharged in bankruptcy, foreclosure or discharged by law.”)

---

[5]  The holdings in *HWA and CSB* are further in line with long-standing Georgia law that that a lender’s failure to confirm foreclosure of collateral property does not extinguish the remaining debt” and, thus, does not prevent a lender from pursuing other collateral securing the underlying debt.  *E.g., Worth v. First. Nat’l Bank of Alma*, 175 Ga. App. 297, 333 S.E.2d 173 (1985); *see also General Motors Accept. Corp. v. Newton*, 213 Ga. App. 405, 444 S.E.2d 805 (1994); *Inland Mortg. Capital Corp. v. Chivas Retail Partners, LLC*, 740 F.3d 1146 (7th Cir. 2014), *cert. denied*, 135 S.Ct. 92 (2014) (applying Georgia law in finding lender could enforce guaranties, despite failing to confirm foreclosure).

Guarantors' erroneously contend that the "necessary waiver provisions noted by the Court of Appeals in *HWA* and [*CSB*] are not present in the Guaranties in this case." (DE 5-1 at 16-17). The fallacy of Guarantors' argument is clear in that the 2006 Guaranties and 2007 Guaranties are nearly ***identical*** to guaranties referenced in *HWA* and *CSB,* save the names and signatures of the guarantors. In support of its holding, the *HWA* Court specifically quoted sections 1, 4, and 9 of the guaranty at issue. *HWA*, 322 Ga. App. at 885-886. Similarly, the *CSB* Court also quoted sections 1 and 4 of the pertinent Belke guaranty.[6] *See CSB*, 328 Ga. App. at 612-614. A comparison of sections 1, 4, and 9 of the 2006 Guaranties and the 2007 Guaranties reveals the same waiver language referenced by the *HWA* and *CSB* Courts. (DE 1-8 at 4; DE 1-11 at 4). Due to the near identical nature of these provisions, Guarantors conceded that the 2006 and 2007 Guaranties contained "(1) an express and comprehensive waiver of any and all defenses to [their] liability on the entire balance due on the note; [and ] (2) the [Guarantors'] express consent for the payee to collect on other collateral and to apply the proceeds to the amount due on the note and that such application of receipts would not reduce, affect, or impair guarantor's liability…" (DE 5-1 at 16).

---

[6] The holding in *CSB* applies to two differing sets of guaranties: the Belke and Couey guaranties. *CSB*, 328 Ga. App at 612-614. The Couey guaranties are discussed, *infra*.

Furthermore, the 2006 Guaranties and the 2007 Guaranties also contain the "critical" voluntary provisions that Guarantors claim would need to be present for them to remain liable for the Indebtedness, absent confirmation of the Foreclosure. (DE 5-1 at 17). First, Section 6 of the *HWA* guaranty and the Belke guaranty in *CSB* collectively contained a provision that "… [t]he liability of the Undersigned shall not be affected or impaired by any of the following acts or things… (vii) any foreclosure or enforcement of any collateral or security [.]…" *HWA*, 322 Ga. App. at 885; *CSB* 328 Ga. App. at 611. The 2006 Guaranties and 2007 Guaranties contain this same provision. (DE 1-8 at 3; DE 1-11 at 3). Second, the pertinent *HWA* and *CSB* guaranties further state that

> the Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure or any mortgage or security interest securing the Indebtedness whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statue or judicial decision. The Undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations have not been discharged.

*HWA*, 322 Ga. App. at 886; *CSB,* 328 Ga. App. at 612. The 2006 Guaranties and 2007 Guaranties also contain this same language. (DE 1-8 at 3; DE 1-11 at 3). Thus, Guarantors can hardly be heard to complain that they did not "knowingly and voluntarily waive the benefits of the Georgia Confirmation Statute," when the Court of Appeals of Georgia has already found similar language binding upon

100092456.1

guarantors for a deficiency in the absence of foreclosure confirmations.[7] *HWA*, 322 Ga. App. at 886; *CSB,* 328 Ga. App. at 613-614.

But the 2006 Guaranties and 2007 Guaranties are not the only guaranties that reference Guarantors' express waiver of PNC's requirement to first confirm the foreclosure before pursuing a deficiency against Guarantors.[8] The 2008 Guaranties state that

> the Guarantor also waives any and all rights or defenses based on the suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A)… any 'one action' or '*anti-deficiency*' law or any other law which may prevent Lender from bringing any action, *including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale*… [or] (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral to the Indebtedness …

---

[7] Guarantors' arguments concerning extending their liability by "implication and interpretation" beyond the terms of the Guaranties are inapplicable, in light of the near identical nature of the guaranties at issue here and in *HWA* and *CSB*. (DE 5-1 at 14-15). The facts in *Ameris Bancorp v. Ackerman*, 296 Ga. App. 295, 674 S.E.2d 358 (2009), concerned exculpatory clauses in a lease and a guaranty, which have no bearing on the issues here. Similarly, *Redman Industries, Inc. v. Tower Properties, Inc.,* 517 F. Supp. 144 (N.D. Ga. 1981) is inapposite as it concerned a deficiency debt agreement executed by guarantors who sought to then pursue indemnification directly against the borrower for a loan deficiency following a failed foreclosure confirmation.

[8] Guarantors' reference to two pre-*CSB* trial court orders is also misplaced. (DE 5 at 18-19). Contrary to Guarantors' argument, neither case discussed *CSB*. (*Id*. at 19). In fact, the Courts in both cases based their rulings almost exclusively on the fact that the guaranties in those cases differed from the guaranty at issue in *HWA*. (DE 5-16 at 2-4; DE 5-17 at 2-7) The implications of both cases have no bearing on this case, in light of the holding in *CSB* and the near identical nature of the Guaranties, here, to the guaranty in *HWA*.

100092456.1

(DE 1-14 at 3) (emphasis added). Such waiver language has likewise bound guarantors for a deficiency judgment that results on a note following a lender's inability to confirm foreclosure. *See CSB,* 328 Ga. App. at 613-14 (finding lender could separately enforce the Couey guaranties since they contained broad waivers of defenses as well as guarantors' waiver that lender could enforce guaranties without recourse to borrower or land "through foreclosure proceedings under the Security Deed"); *see also CertusBank,* 2014 WL 5668173 at *4.

Thus, the Court should deny the Motion to Dismiss because the Complaint, when construed in PNC's favor, states the factual basis for a breach of guaranty claim against Guarantors that is plausible, and indeed compelling, on its face.

## III. Guarantors' Motion to Certify Should Be Denied.

PNC opposes Guarantors' alternative motion for certification of two questions to the Georgia Supreme Court on the grounds that clear and controlling law implicating the Guaranties already exists. Certification of state law questions is a matter of discretion. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974) ("We do not suggest that where there is doubt as to local law and where the certification procedure is available, resort to it is obligatory. . . . Its use in a given case rests in the sound discretion of the federal court.") The Eleventh Circuit has stated that:

100092456.1

> We sometimes will decide a question of state law, even when there is doubt as to how a state court would resolve the issue. *See Smigiel v. Aetna Casualty & Surety Co.*, 785 F.2d 922, 924-25 (11th Cir. 1986) (stating that "[a]lthough we are *Erie* bound, we may exercise an option to make an educated guess as to how the [state] courts would resolve this issue"). By requiring federal courts to anticipate the decisions of state courts, *Erie* jurisprudence contemplates that federal courts will in some cases be called upon to decide unsettled issues of state law. On many occasions this court has resolved difficult or uncertain questions of state law without recourse to certification.

*Escareno v. Noltina Crucible and Refractory Corp.*, 139 F.3d 1456, 1461 (11th Cir. 1998) (footnotes omitted).

One of the factors federal courts consider in deciding whether to certify a question to a state court is whether the legal issue is unsettled or the state court authority is not sufficiently clear for the federal court to make a determination. *See Tiara Condominium Ass'n v. Marsh & McLennan Co., Inc.*, 607 F.3d 742, 748 (11th Cir. 2010) (granting motion to certify question to Florida Supreme Court where the state law was unsettled and in some respects contradictory). Federal courts in this Circuit must examine "the closeness of the question and the existence of sufficient sources of state law. . . to allow a principled rather than conjectural conclusion." *Escareno*, 139 F.3d at 1461 (quoting *State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274 (5th Cir. 1976)) (granting a motion to certify question to the state supreme court where the statutory language at issue allowed

for differing interpretations and there was no controlling precedent under state law); *but cf., City of Rome v. Hotels.com, L.P.*, 549 Fed. Appx. 896, 904 (11th Cir. 2013) (finding "*Erie* guesses" not required when controlling law present).

Here, no question of unsettled law exists as the Court of Appeals of Georgia has already applied well-established principles of contract interpretation to the guaranties present in *HWA* and CSB, which are also present in this case. As discussed , *supra*, the Court of Appeals found that the waiver provisions found in the guaranties in *HWA* and *CSB* allow a lender to pursue a deficiency judgment directly from guarantors, even if no confirmation of collateral foreclosure occurs. (*See* Section II, C., *supra*.) Undeniably, the pertinent provisions of the Albright guaranty in *HWA* and the Belke guaranty in CSB nearly mirror the provisions found in the 2006 Guaranties and the 2007 Guaranties. Moreover, the provisions of the Couey guaranty are similarly found in the 2008 Guaranties. Finally, waivers of legal and equitable defenses, as discussed in *HWA* and *CSB*, are present in all of the Guaranties.

While this Court has discretion to make "*Erie* guesses where state law is unclear," no such guess is required here. *See Escareno*, 139 F.3d at 1461. The Georgia Supreme Court has already denied *certiorari* in both *HWA* and *CSB*, thus

there is no doubt as to how the Guaranties should be interpreted. The controlling effect of *HWA* and *CSB* implicates both certified questions.

Thus, Guarantors' contention that Georgia law regarding contract interpretation of waivers present in the Guaranties at issue here is insufficiently clear, lacks merit. (DE 5-1 at 22). The fact that Guarantors refuse to acknowledge that the Guaranties they executed have already been found to contain necessary waivers of PNC's need to first confirm the Foreclosure, does not create a "conflict in Georgia law," as Guarantors posit. Rather, judicial efficiency cautions against deferring denial of the Motion to Dismiss in order to wait for the Georgia Supreme Court to answer questions concerning guaranties and corresponding waiver language it has twice refused to consider. *See City of Rome v. Hotels.com, L.P.*, 549 Fed. Appx. 896, 904 (11th Cir. 2013). Guarantors' request for certification of their proposed questions to the Georgia Supreme Court, must be denied.

## CONCLUSION

For these reasons, PNC respectfully requests that this Court deny the Motion to Dismiss. As clear Georgia law exists as to the Guaranties at issue here, PNC further respectfully requests that the Court deny Guarantors' alternative Motion to Certify Questions to the Georgia Supreme Court.

**CARLTON FIELDS JORDEN BURT, P.A.**

*/s/ F. Xavier Balderas*
Walter H. Bush
Georgia Bar No. 098825
F. Xavier Balderas
Georgia Bar No. 705136
One Atlantic Center
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia  30309-3449
Tel:     404.815.3400
Fax:     404.815.3415

**Attorneys for Plaintiff PNC Bank, N.A.**


## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

Pursuant to Local Rule 7.1(D), I hereby certify that this document has been prepared with Times New Roman font, 14 point.

*/s/ F. Xavier Balderas*
F. Xavier Balderas

100092456.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION | Civil Action No.: |
| Plaintiff, | 1:14-CV-3368-ELR |
| v. | |
| KENNETH D. SMITH, WILLIAM R. DOOLEY, TERRY W. DOOLEY, ROBERT MCNAUGHTON, CHRIS DOOLEY, TIMOTHY R. STERRITT, and NEW SOUTH VISION PROPERTIES, LLC, a Florida Limited Liability Company, | |
| Defendants. | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing ***PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)), OR IN THE ALTERNATIVE, MOTION TO CERTIFY*** on the parties identified below by using the CM/ECF system, which automatically sends e-mail notification of such filing to the following attorneys of record:

R. Matthew Reeves, Esq.
Andersen Tate & Carr, P.C.
One Sugarloaf Centre, Suite 4000
1960 Satellite Blvd.
Duluth, Georgia 30097

This 23rd day of January, 2015.

*/s/ F. Xavier Balderas*
F. Xavier Balderas

- 22 -